UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZABIHULLAH RAHIMI,<br><br>Petitioner,<br><br>v.<br><br>MINGA WOFFORD, et. al.,<br><br>Respondents. | No. 1:26-CV-0520-DC-DMC (HC)<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner, an immigration detainee who is proceeding with counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondents filed a response, ECF No. 6, and Petitioner filed a traverse, ECF No. 7.

**I. BACKGROUND**

Generally, Petitioner argues his detention violates due process and the Administrative Procedures Act (APA). See ECF No. 1. Respondents contend that the petition should be denied because Petitioner's detention is mandatory and Petitioner is ineligible for a redetermination of custody. See ECF No. 6.

///

///

///

1

A. **Petition for Writ of Habeas Corpus**

Petitioner asserts that he is part of an ethnic and religious minority in Afghanistan, who are targeted by the Taliban. See ECF No. 1, pg. 2. According to Petitioner, when the Taliban gained control over the country in August 2021, Petitioner feared for his life. See id. Petitioner therefore got a visa for Brazil and subsequently made his way to Mexico where he made an appointment on the Custom and Border Patrol (CBP) One app. See id. at 3. Petitioner was then "granted humanitarian parole on March 7, 2024 by the respondents" Id. (citing Petitioner's Exhibit A, ECF No. 1-2). Petitioner's exhibit indicates that Petitioner was admitted until March 6, 2026. See ECF No. 1-2, pg. 2. Humanitarian parole was granted pursuant to under 8 U.S.C. § 1182(d)(5). See ECF No. 1, pg. 11. On March 7, 2024, Respondents initiated removal proceedings against Petitioner pursuant to 8 U.S.C. § 1229a, Petitioner "timely filed his I-589 with the court," and "regularly complied with and appeared for all court hearings and ICE check-ins." Id. at 12. "Subsequently, Respondents issued work authorization to Petitioner pursuant to 8 C.F.R. § 274a.12(c)(08)." Id.

On November 16, 2025, an officer arrived at Petitioner's home and informed Petitioner his GPS was not transmitting, and Petitioner

> gave him his arm. Immediately three other officers swarmed him, put him in handcuffs and led him to their car. He was never told why he was being arrested. He was never given notice that his parole was being revoked. He was never given a hearing before a neutral third party to determine if his circumstances had changed such that he was now a flight risk or a danger to the community.
> ECF No. 1, pg. 3.

Petitioner brings two claims for relief, (1) Violation of the Administrative Procedure Act and (2) Violation of Fifth Amendment Right to Due Process. See id. at 13-17. Petitioner seeks immediate release, a declaration that "that Petitioner's detention without an individualized determination violates the Due Process Clause of the Fifth Amendment and the Administrative Procedures Act," and any other "relief the Court deems just and proper." Id. at 17.

B. **Respondents' Opposition**

Respondents assert that "Petitioner is mandatorily detained during removal proceedings pursuant to 8 U.S.C. § 1226(b)." ECF No. 6, pg. 1. Respondents argue that Petitioner "provides insufficient justification for intervention by this Court while these proceedings are

1  progressing through the immigration court," and therefore, the petition should be denied. Id.
2  Respondents contend that Petitioner "was detained after violating the terms of the Alternative to
3  Detention Program 12 times." Id. (citing Respondents Exhibit 1, ECF No. 6-1, pg. 2.)
4        Respondent contends that Petitioner is ineligible for a bond hearing because
5  Petitioner is "'applicant for admission' within the meaning of 8 U.S.C. § 1225(a) and subject to
6  mandatory detention by Immigration and Customs Enforcement under 8 U.S.C. § 1225(b)(2)(A)
7  during the pendency of his removal proceedings." Id. at 2, (citing Cortes Alonzo v. Noem et
8  al., No. 1:25-cv-01519-WBS-SCR (E.D. Cal. Nov. 17, 2025)). Respondents further argue that
9  immigration judges "'lack authority to hear bond requests or to grant bond to aliens.'" Id.
10  (quoting In re Matter of Yajure Hurtado, 29 I & N Dec. 216 (BIA 2025).
11      **C.**    **Petitioner's Reply**
12        Petitioner asserts that because he was released pursuant to 8 U.S.C. § 1182(d)(5),
13  terminating such parole requires compliance with 8 C.F.R. § 212.5(e)(2)(i). See ECF No. 7, pg. 4.
14  According to Petitioner, Respondents fail to show Petitioner was provided written notice that he
15  would be re-detained, that Petitioner was informed of his alleged violations of parole, or that
16  Petitioner was offered an opportunity to be heard. See id. Petitioner challenges the evidence
17  provided by Respondents, stating that it was dated the day he was detained, and the narrative
18  provided in that document supports Petitioner's presentation of the facts – that Petitioner was
19  arrested at his home, without notice or opportunity to be heard. See id. Thus, Petitioner argues his
20  detention was unlawful, he should not be required to post bond, nor should any additional
21  restrictions be imposed on Petitioner without an "individualized consideration" of whether
22  Petitioner presents a flight risk or danger to community. Id. at 5-6.
23
24          **II. DISCUSSION**
25        The undersigned finds that Petitioner has a protectable liberty interest in remaining
26  out of custody and he was deprived of this liberty without due process when re-detained without
27  notice or a hearing. Accordingly, the undersigned will recommend granting Petitioner's petition
28  for writ of habeas corpus as to Petitioner's due process claims and order Petitioner immediately

released from Respondents' custody under the same conditions he was released previously. Given this recommendation, the undersigned finds it is not necessary to consider Petitioner's claims arising from the APA.

### A. Petitioner's Re-Detention

As a preliminary matter, Respondents do not respond to Petitioner's claim that he was initially released on humanitarian parole pursuant to under 8 U.S.C. § 1182(d)(5), ECF No. 1, pg. 11. That section provides that Secretary of Homeland security may issue discretionary parole "for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5). Thus, Respondents' claim, which the Court does not address at this time, that immigration judges lack authority to issue release for Petitioner, is inapplicable. Petitioner contends that he was released pursuant to a decision by the Secretary of Homeland Security, not an immigration judge. Again, Respondents do not provide any response nor attempt to refute Petitioner's claim.

Respondents assert that Petitioner was detained on November 16, 2025, "after violating the terms of the Alternative to Detention Program 12 times." ECF No. 6, pg. 1 (citing Respondents Exhibit 1, ECF No. 6-1, pg. 2). However, the cited exhibit does not appear to show that Petitioner violated his terms. See ECF No. 6-1. As Petitioner notes, all the information on that document appears to be recorded on the day Petitioner was detained. The document states: "CIS checked on 11/16/2025 with Positive result. EARM checked on 11/16/2025 with Positive result. IAFIS checked on 11/16/2025 with Positive result. NCIC checked on 11/16/2-25 with Negative result. TECS checked on 11/16/2025 with Positive result." Id. at 2. Later in the document, it states that Petitioner "was taken into custody without incident." Id. It next states that Petitioner "was enrolled into the IDENT/IAFIS systems. TECS returned Negative results for [Petitioner]. IDENT/TAFIS returned a positive hit." Id. Nothing in the document indicates that Petitioner violated terms 12 times. Even assuming these positive result/negative results may indicate a violation, Respondents do not inform the Court whether a negative result or positive result would be considered a violation. Further, the document contradicts itself in that it states that "TECS checked on 11/16/2025 with Positive result," and later states that, after Petitioner was

taken into custody on November 16, 2025, "TECS returned Negative results for [Petitioner]." Id. Thus, the document provided by Respondents does not support their claim that Petitioner violated the terms of his release.

Absent further documentation from Respondents, despite a clear Court Order to provide all necessary documents, ECF No. 5, pg. 2, and absent any legal argument that Petitioner violated terms of his release therefore justifying re-detention, the Court cannot consider whether there was a violation nor whether such violation gave rise to lawful re-detention. The Court can only consider the arguments and information properly argued by parties. Further, even if Petitioner did violate terms of his detention, due process would mandate notice and a hearing to inform Petitioner of this violation, which did not occur here. Indeed, this lack of clarity as to whether Petitioner violated the terms of his release underscores the necessity of providing due process when adjudicating such an allegation.

### B. Due Process

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. Hernandez v. Session, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. Id. at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). The Court considers each step in turn.

### 1. Liberty Interest

As for the first step, the Court finds Petitioner has shown he has a protectable

5

liberty interest. See Morrissey, 408 U.S. at 482. "Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." Id. (quoting Morrissey, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody." Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." R.D.T.M. v. Wofford, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

As to whether there exists a protected liberty interest, the Court finds Petitioner has a liberty interest as he was released from immigration detention, which created a reasonable expectation that he would be entitled to retain his liberty absent a material change in circumstances. Petitioner's re-detention goes against United States Supreme Court precedent which recognizes that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued release. See Morrissey, 408 U.S. 471 at 482. Given this, the Court finds Petitioner has established his liberty interest in his continued release.

          2.    <u>Procedural Due Process</u>

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the

Constitution. To determine such, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were violated.

First, Petitioner has a substantial private interest in remaining free from detention. As discussed above, Petitioner has lived in the United States for almost twenty months. Despite that, Petitioner has now been detained for almost three months without being afforded a hearing. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. See Manzanarez v. Bondi, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly); see also Colina-Meira v. Lyons, No. 1:25-cv-1716 CSK P, 2025 LX 673205 (E.D. Cal. Dec. 31, 2025).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any bond or custody redetermination hearing. "[T]he risk of erroneous deprivation is high when, as here, parole is revoked without written notice or reason." Chavarria, 2025 WL 3533606, at *3; see also A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondents do not contend that Petitioner is or was a flight risk or a danger to the community. Thus, Court finds there is a serious likelihood Petitioner will be erroneously deprived of his liberty interest. Moreover, without any procedural safeguards to determine whether his re-detention was justifiable, the probative value of additional procedural safeguards is high. R.D.T.M., 2025 WL 2617255, at *4.

///

   Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. See Garcia v. Andrews, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). While the government has an interest in enforcing immigration laws, Respondents' interest in detaining Petitioner without notice or a hearing here is low. See Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). Detention hearings in immigration courts are routine and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. Even if Respondents believed they had a proper reason to detain Petitioner, such decision on their part would warrant written notice and a pre-detention hearing rather than automatic detention. See E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process"). In addition, the government's interest is even lower because Petitioner was previously released pursuant to 8 U.S.C. § 1182(d)(5), indicating the government previously determined that Petitioner is not a danger or flight risk.

   On balance, the Court finds the Matthews factors weigh in favor of finding Petitioner is entitled to notice and a bond hearing, and Petitioner should have been provided such notice and a hearing before he was re-detained. The Due Process Clause requires that, at a minimum, "that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a pre-deprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents identify no reason why written notice was not provided or why a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).

Thus, the undersigned finds Petitioner is entitled to relief as to his due process claims and will recommend granting Petitioner's petition for writ of habeas corpus.

### III. CONCLUSION

Based on the foregoing, the undersigned recommends:

1. It is RECOMMENDED that Petitioner's petition for writ of habeas corpus, ECF No. 1, be GRANTED as to Petitioner's claims that his re-detention violate due process;

2. It is RECOMMENDED that Petitioner Sarfaraz Mohammed be RELEASED IMMEDIATELY from Respondents' custody under the same conditions he was released previously. At the time of release, Respondents must return all of Petitioner's documents and possessions; and

3. It is RECOMMENDED that Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven day notice and a hearing before a neutral fact-finder where Respondents show: (a) there are material changed circumstances which demonstrate that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 3, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE